(November 1, 1913.)

## FIRST NATIONAL BANK OF CLARKSTON, WASHINGTON, Respondent, v. OREGON—WASHINGTON RAILROAD & NAVIGATION COMPANY, Appellant.

[136 Pac. 798.]

RAILROAD COMPANY—BILL OF LADING—PROVISIONS CONSTRUED—LIABILITY OF THE RAILROAD FOR BREACH OF BILL OF SALE.

1. Where a bill of lading between a shipper and a railroad company contains the following provision, "the property described below, in apparent good order except as noted . . . . which said company agrees to carry to its usual place of delivery at said destination if on its road, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed, as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the conditions, whether printed or written, herein contained (including conditions on the back hereof) and which are agreed to by the shipper and accepted for himself and his assigns. The surrender of the original order bill of lading properly indorsed shall be required before the delivery of the property," *held,* that this provision applies alike both to the railroad company and the shipper and does not apply alone to limitations in favor of the railroad company.

2. Where it is provided in the bill of lading "that the surrender of the original order bill of lading properly indorsed shall be required before the delivery of the property," this provision is prohibitory against the railroad company, and prohibits the railroad company from delivering the property until the bill of lading is

indorsed, and there should be no delivery until such provision is complied with or excused.

3. When a bill of lading is outstanding, the railroad company delivers goods at its peril without requiring the bill of lading, and if it so delivers them to some one other than the *bona fide* holder for value of the bill of lading, it is liable to him for conversion of the goods.

APPEAL from the District Court of the Second Judicial District for the County of Nez Perce.   Hon. Edgar C. Steele, Judge.

An action to recover upon a bill of lading for breach of the provisions of the bill of lading.   Judgment *affirmed.*

Fred E. Butler and W. A. Robbins, for Appellant.

The evidence shows that the substantial portion of the shipment of goods is now retained by the defendant in a public warehouse at Waco, Texas, ready for delivery upon surrender of the bill of lading, properly indorsed, but that this plaintiff and its assignor refuse to give disposition of the shipment and are now attempting to recover the full value of the consignment.   The law is clear that plaintiff cannot do this under these circumstances, but that the owner must receive and give disposition of said shipment and then sue defendant for damages, if any, for the difference in depreciation of the value of said shipment sustained by reason of defendant's alleged failure to comply with its contract of carriage.   (*Rylands v. Chesapeake Ry.*, 55 W. Va. 181, 46 S. E. 923; *Gulf etc. Ry. v. Pitts & Son*, 37 Tex. Civ. App. 212, 83 S. W. 729; *Baumbach v. Gulf etc. R. R. Co.*, 4 Tex. Civ. App. 650, 23 S. W. 693; *Wells, Fargo & Co. v. Hanson*, 41 Tex. Civ. App. 174, 91 S. W. 321; *Clark v. American Exp. Co.*, 130 Iowa, 254, 106 N. W. 642.)

A portion of the goods was admittedly shipped on consignment, under plaintiff's own testimony, and defendant would therefore have right to deliver same to Drake & Company as agents and brokers for the shippers.   (*Earnest v. Delaware etc. Ry.*, 149 App. Div. 330, 134 N. Y. Supp. 323.)

There was no conversion, since the evidence shows conclusively that Drake & Company merely examined the goods as they had a right to do and immediately thereafter returned the warehouse receipt to the railroad company, who has retained it and the goods ever since that time, subject to the shipper's instructions. (*Cummings v. People etc. Assn.*, 61 Neb. 728, 86 N. W. 474.)

So long as the goods remain in specie, however much they may be depreciated in value, the consignee or owner must receive them, when tendered, and can recover from the carrier only the damages which he has sustained by the delay. (Hutchinson on Carriers, 3d ed., sec. 1372.)

Ben F. Tweedy, for Respondent.

Where the shipper of produce receives a bill of lading, draws drafts on the consignee, and a bank advances money on the drafts, and takes an assignment of the bill of lading to itself, and sends the bill of lading and the drafts to a third party to collect from the consignee, and the consignee repudiates the drafts, and refuses to pay them, and the drafts and bill of lading are returned to the bank, or assignee, and thereupon the common carrier delivers the goods to the consignee without requiring the surrender of the bill of lading, such carrier becomes liable to the bank, or assignee, as for conversion. (*First Nat. Bank v. Nor. Pac. Ry. Co.*, 28 Wash. 439, 68 Pac. 965; *Ratzer v. Burlington, C. R. & N. Ry. Co.*, 64 Minn. 245, 58 Am. St. 530, 66 N. W. 988; *Union Pac. Ry. Co. v. Johnson*, 45 Neb. 57, 50 Am. St. 540, 63 N. W. 144; *The Thames*, 14 Wall. 98, 20 L. ed. 804; *North v. Merchants' etc. Transp. Co.*, 146 Mass. 315, 15 N. E. 779; *Forbes v. Railway Co.*, 133 Mass. 154; *Furman v. Union Pac. Ry. Co.*, 106 N. Y. 579, 13 N. E. 587; *Boatmen's Sav. Bank v. Western & A. Ry. Co.*, 81 Ga. 221, 7 S. E. 125; *National Bank v. Atlanta & C. Air Line Ry. Co.*, 25 S. C. 216; *Midland Nat. Bank v. Mo. Pac. Ry. Co.*, 132 Mo. 492, 53 Am. St. 505, 33 S. W. 521; *Armentrout v. St. Louis etc. Ry. Co.*, 1 Mo. App. 158; *Gates v. Chicago etc. Ry. Co.*, 42 Neb. 379, 50 N. W. 583; *Garden Grove Bank v. Humeston & S. Ry. Co.*, 67 Iowa, 526, 25 N. W. 761; *Florence & C. C. R. Co. v. Jensen*, 48 Colo. 28, 108 Pac. 974.)

After property has been converted, an offer to return it is no defense, and the respondent is under no obligation whatever to present the bill of lading and take delivery of the property to itself, thereby to help the appellant to avoid liability to it for conversion of the car of canned fruit by wrongfully delivering the same without requiring surrender of original bill of lading. (*Baltimore & O. R. Co. v. O'Donnell*, 49 Ohio St. 489, 34 Am. St. 579, 21 L. R. A. 117, 32 N. E. 476; *Fidalgo Island Shingle Co. v. Brown*, 61 Wash. 516, 112 Pac. 629; *Carpenter v. Dresser*, 72 Me. 377, 39 Am. Rep. 337; *Hofschulte v. Panhandle Hardware Co.* (Tex. Civ. App.), 50 S. W. 608; *Waller v. Bowling*, 108 N. C. 289, 12 S. E. 990, 12 L. R. A. 261; *Higgins v. Whitney*, 24 Wend. (N. Y.) 379; *Brewster v. Silliman*, 38 N. Y. 423; *Kelly v. McDonald*, 39 Ark. 387.)

Actual change of physical possession does not necessarily have to take place in order to effect a delivery. (6 Cyc. 463, 464.)

"If something remains to be done to complete delivery and acceptance, the carrier is still liable at least as a warehouseman." (6 Cyc. 464.)

STEWART, J.—The facts in this case are as follows: The Sprague Sanitary Preserving Company of Clarkston, Washington, and Lewiston, Idaho (hereafter referred to as the preserving company) consigned a shipment of canned goods moving from Lewiston, Idaho, to Waco, Texas, on July 6, 1912, on an order bill of lading to E. F. Drake & Co., at Waco, Texas. Immediately upon the presentation of the goods by the preserving company to the defendant for shipment the company presented the bill of lading to the plaintiff with two drafts signed by the preserving company attached thereto, aggregating the sum of $1,863.55, which drafts were drawn on E. F. Drake & Co., at Waco, Texas, and the plaintiff paid to the preserving company said sum and the bill of lading and drafts were assigned to the plaintiff.

The evidence shows that E. F. Drake & Co. at Waco, Texas, were fruit brokers and commission merchants and had had

correspondence with the preserving company with reference to consigning to Drake & Co. the carload of fruit in controversy, and that as soon as the car was loaded the preserving company drew the drafts in question in order to secure ready cash, claiming that the fruit had been sold to Drake & Co. The plaintiff claims that a portion of the goods amounting to $1,863.55 was sold to Drake & Co. at the time they were loaded into the car at Lewiston.

The order bill of lading shows that the appellant received at Lewiston, July 6, 1912, from the preserving company, certain described canned goods. It is also shown by the evidence that the canned goods delivered by the preserving company to the appellant and loaded in the defendant's cars and consigned to E. F. Drake & Co., Waco, Texas, arrived at Waco the 22d of July and were delivered to E. F. Drake & Co. on the 23d of July, and were so delivered at the request of E. F. Drake, and that at the time of such delivery the bill of lading had been assigned to the plaintiff and the drafts had been drawn by the preserving company and directed to E. F. Drake & Co., Waco, Texas, and made payable to the order of the First National Bank of Clarkston on the arrival of the car of the O. W. R. & N. Co., #10,558, which the evidence shows to be the car that carried the shipment which contained the canned goods as shown in the complaint.

The drafts drawn by the preserving company against E. F. Drake & Co. were transmitted for collection to the First National Bank at Waco, Texas, but the drafts were not paid, and the bill of lading was not delivered. The bill of lading above referred to contains the contract of the railroad company made with the preserving company, and is signed by the Sprague Sanitary Preserving Co., shipper, E. L. Wilsa, agent. The bill of lading is from the Oregon-Washington Railroad & Navigation Company, and is in part as follows:

"Received, subject to the classifications and tariffs in effect on the date of issue of this original bill of lading, at Lewiston, Idaho, July 6, 1912, from Sprague Sanitary Preserving Co. the property described below, in apparent good order, except as noted (contents and condition of contents of packages un-

known), marked, consigned and destined as indicated below, which said Company agrees to carry to its usual place of delivery at said destination, if on its road, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed, as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the conditions, whether printed or written, herein contained (including conditions on back hereof) and which are agreed to by the shipper and accepted for himself and his assigns.

"The surrender of the Original Order Bill of Lading properly indorsed shall be required before the delivery of the property. Inspection of property covered by the bill of lading will not be permitted unless provided by law or unless permission is indorsed on the original bill of lading or given in writing by the shipper. . . . .

"Consigned to order of Sprague Sanitary Preserving Co. Destination Waco, State of Texas, County of ——. Notify E. F. Drake & Co. at Waco, Texas. Route U. P. c/o C. & S. Ry. Car Initial O. W. R. N. Car No. 10558.

| Packages. | Description of Articles and Special Marks. | Weight. |
|---|---|---|
| 804 | As Canned Goods    @ 60  #Ea | 48240 |
| 40 | "        "        "        @100  #Ea | 4000 |
| | | 52240" |

This bill of lading contains this language: "The property described below, in apparent good order, except as noted . . . . which said company agrees to carry to its usual place of delivery at said destination, if on its road, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed, as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the conditions, whether printed or written, herein contained (including conditions on back hereof) and

which are agreed to by the shipper and accepted for himself and his assigns. *The surrender of the original order bill of lading properly indorsed shall be required before the delivery of the property.*"

The allegations in the complaint are based upon violations of the foregoing provisions of the bill of lading, in that the company violated the provision, "the surrender of the original bill of lading properly indorsed shall be required before the delivery of the property."

The evidence clearly proves, and the jury so found, that the car of canned goods covered by the bill of lading was shipped from Lewiston, Idaho, to Waco, Texas, and there delivered to E. F. Drake & Co., the party who was named in the bill of lading and who was to be notified by the railroad company carrying the car into the city of Waco, Texas, and to whom the evidence shows the Sprague Preserving Company sold the contents of said car, and as payment of the purchase price the drafts in question were issued.

We think there can be no question but that the evidence conclusively shows a delivery to E. F. Drake & Co., and after they were delivered to Drake & Co. the evidence shows that Drake & Co. transferred the warehouse receipt to the last connecting carrier and thereupon redelivered the car of canned goods, but not until after Drake & Co had failed to sell the canned goods, and in an effort to defeat the payment of the drafts at the First National Bank at Waco. Drake knew that the bill of lading with the drafts attached were at the First National Bank before the 23d day of July, 1912, for the evidence clearly shows this in a letter written by Drake & Co. to the preserving company in which they say: "Gentlemen: The First National Bank of this city have two drafts on us from you with bill of lading attached. These drafts we presume are for car of canned goods you are shipping to us, but as you suggested consigning this car to us, we do not feel justified in paying these drafts until it has arrived and we can get the buyers here started on it." The delivery on the 23d day of July is admitted, so there is no

question in this case but that there was a delivery to Drake & Co.

Counsel for appellant and respondent disagree as to the questions presented upon this appeal. After examining the record we are satisfied that the action is founded upon the bill of lading and whether the respondent can recover upon the facts of the case; that the other questions raised in the case are purely incidental and relate to whether the facts show a liability under the law. We will first consider the bill of lading and the liability of the appellant arising out of the facts, which we think disposes of this case.

In the case of *First National Bank v. Northern Pac. Ry. Co.*, 28 Wash. 439, 68 Pac. 965, the supreme court of Washington had under consideration facts very similar to the facts in the present case, and in that opinion the court very fully reviewed the effect of the bill of lading and the liability of the railroad company, and said: "Primarily, a bill of lading or receipt is not necessary to constitute the contract. The delivery of commodities to the common carrier, with the designation of the person and place of the shipment, is all that is requisite. Custom and the law fixes the responsibility and liability of the carrier. The presumption then is that the consignee is the owner, and without notice to the contrary, the carrier may safely make delivery to him. It seems from an examination of a large number of cases involving the nature of bills of lading made by a common carrier that the custom very generally exists of shippers selling or assigning such bills of lading and receiving payment therefor and advances upon the same. This custom enables the shipper to receive immediately payment from his local bank. The usage materially aids and stimulates trade and commercial transactions. It enables the small shipper or producer to realize upon agricultural products, such as wheat, at the most favorable market prices. In the case of *Ratzer v. Burlington etc. R. R. Co.*, 64 Minn. 245, 58 Am. St. 530, 66 N. W. 988, where a delivery was made without demanding the bill of lading, the court observed: 'We are of the opinion that on the facts found the plaintiff is entitled to judgment. A vast portion of the produce of

this country is moved from the agricultural districts to the commercial centers and the seaboards by the aid of advances made on the security of such bills of lading. . . . . This is well understood by the railroad companies and everyone else.' ''

The court then discusses the result that would follow the adoption of a rule contrary to that announced in the case of *Ratzer v. Railroad Co., supra,* and the reasoning is very convincing. The court then further in the opinion in that case cites the case of *Savings Bank v. Atchison T. & S. F. R. Co.,* 20 Kan. 519, and the following cases are also cited in support of the rule: *Union Stockyards Co. v. Westcott,* 47 Neb. 300, 66 N. W. 419; *Walters v. Western etc. R. R. Co.* (C. C.), 63 Fed. 391; *Gates v. Chicago etc. R. R. Co.,* 42 Neb. 379, 60 N. W. 583; *Furman v. Union etc. R. R. Co.,* 106 N. Y. 579, 13 N. E. 587; *Garden Grove Bank v. Humeston & S. Ry. Co.,* 67 Iowa, 526, 25 N. W. 761; and the court concludes: ''Thus the better reasoning and the weight of authority seem, by the force of general commercial usage, to require that the delivery of commodities be made upon the production of the bill of lading, if one be issued by the carrier. Hutch. Carr., 2d ed., sec. 130b, observes: 'The carrier, being thus bound to deliver the goods in accordance with the bill of lading, is, it is said, under obligations to ascertain whether or not a bill of lading was delivered to the shipper, and, if delivered, he must retain the property until it is demanded by one claiming under that title.' ''

Many other cases support this rule and many cases hold that the rule announced by the supreme court of Nebraska in the *Ratzer v. Railroad Co.* case is correct. It is hardly necessary to cite authorities to the general proposition that when a bill of lading is outstanding, the railroad company delivers the goods at its peril, without requiring the bill of lading, and if it so delivers them to someone other than the *bona fide* holder for value of the bill of lading, it is liable to him for conversion of the goods.

The foregoing authorities state the rule of law which we believe should prevail in the cases where the bill of lading provides, as it does in this case, ''that the surrender of the

original order bill of lading properly indorsed shall be required before the delivery of the property," and such rule is especially applicable because of such provision contained in the bill of lading, and the determination of this question, in our judgment, determines the case.

The appellant cites no authorities which hold contrary to the above holdings, but relies upon the following cases: *Rylands v. Chesapeake Ry. Co.*, 55 W. Va. 181, 46 S. E. 923; *Gulf etc. Ry. Co. v. Pitts & Son*, 37 Tex. Civ. App. 212, 83 S. W. 727; *Gulf etc. Ry. Co. v. Everett*, 37 Tex. Civ. App. 167, 83 S. W. 257; *Baumbach v. Gulf etc. Co.*, 4 Tex. Civ. App. 650, 23 S. W. 693; *Wells, Fargo Co. v. Hanson*, 41 Tex. Civ. App. 174, 91 S. W. 321; *Clark v. Am. Ex. Co.*, 130 Iowa, 254, 106 N. W. 642.

We have examined these cases and we find that the courts properly state the law in those cases applicable to the facts in the particular cases, and in said opinions have discussed the law where the cause of action was for delay in transportation and in delivery of the property, causing damages, and was not for damages for conversion of a car of canned fruit delivered without surrender of the original bill of lading at the time of or before the delivery, but such law does not apply to the facts in this case where it is shown clearly that the bill of lading was not surrendered and that the bill of lading itself was a contract between the railroad company and the shipper, and in that bill of lading the defendant company and the shipper agreed to a provision that "the surrender of the original order bill of lading, properly indorsed, shall be required before the delivery of the property." This provision applies alike both to the railroad company and the shipper and does not apply alone to limitations in favor of the railroad company, and the railroad company is bound by the provisions the same as the shipper, and certainly by this agreement the facts in this case are subject to the rule of law cited, and which this court approves and adopts and applies where the facts are such as in this case.

But whether delivered or not, the bill of lading in this case specifically provides that the surrender of the original order

bill of lading properly indorsed shall be required before the delivery of the property, and the evidence shows without question that the railroad company carried the property described in the bill of lading on its road and its connections, in the identical car which was covered by the bill of lading, to Waco, and delivered the same to the party notified, E. F. Drake & Co., and that the bill of lading was not indorsed as required by the terms of the same, and was never delivered to the party to whom the property was delivered, or its assigns, and has remained in the possession of the plaintiff except in its course pursued to collect the drafts involved in this case.

Drake & Co., upon demand for the payment of the drafts, refused to pay the same, although admitting that they had received the carload of said canned goods from the preserving company. Upon this refusal the plaintiff in this case brought this action and seeks to recover from the defendant for the conversion of said property in violation of its contract with the preserving company, in that it permitted E. F. Drake & Co. to get possession of the property before it was paid for, and contrary to the contract of sale, and thereby plaintiff was damaged.

It is immaterial whether before shipment the car of canned goods was sold to Drake & Co., or was shipped to them merely as brokers of the preserving company or anyone else. Drake & Company could not get the bill of lading from the respondent without first paying the drafts on which the respondent advanced $1,863.55, the amount of the drafts.

The trial court instructed the jury very clearly on the law applicable to the facts in this case, and no exceptions were taken to the instructions, and the jury followed the instructions and the evidence, and the damages allowed in this case were clearly proven.

We find no error which justifies a reversal of the judgment. The judgment is affirmed. Costs awarded to respondent.

Ailshie, C. J., concurs.

SULLIVAN, J., Dissenting.—I dissent. Drake & Co. had not agreed to purchase any goods from the Sprague Sanitary Preserving Co. There had been considerable correspondence or negotiations between them. The Sprague Company had full knowledge that Drake & Company were commission men and did not make purchases outright, and the Sprague Company wired Drake & Company on June 17, that they were going to consign them a car of assorted fruits, etc., and when this car arrived in Waco, the record shows that Drake & Company supposed it was consigned to them to be paid for as soon as the fruit was sold; and the reason Drake & Company instructed the agent of the railroad company to deliver the goods at Kemendo's warehouse was that they supposed that the goods were shipped on consignment to be paid for as soon as sold. Drake testified that as soon as he learned that it was a "shipper's order shipment," they declined to receive it but held the car for advice from the I. & G. N. Co., and advised them that the shipment was held intact with the exception of some cases that had been taken out to be inspected by would-be purchasers. The railroad company at the time of the trial still held it intact for the consignor. Drake & Company advised the railroad company's agent that they had the papers, —meaning the bill of lading,—for such car. That is the reason the railroad company permitted them temporarily to take possession of it, but the goods are all held intact by the railroad company for the consignor except a few selling samples which Drake & Company were authorized by the consignor to take, and as I view it, it is not just and right to compel the railroad company to pay for said goods, under all the facts of this case.

Petition for rehearing denied.