## STRICKLAND TRANSP. CO., Inc. v. AMERICAN DISTRIBUTING CO.

### No. 13898.

United States Court of Appeals
Fifth Circuit.

July 31, 1952.

Rehearing Denied Sept. 4, 1952.

Ralph W. Currie, Dallas, Tex., for appellant.

William A. McKenzie, Angus G. Wynne, Dallas, Tex., for appellee.

Before HOLMES, BORAH and RIVES, Circuit Judges.

RIVES, Circuit Judge.

Before considering the merits of this appeal, we requested briefs as to the jurisdiction of the District Court in a preliminary per curiam opinion as follows:

"PER CURIAM:

"Jurisdiction of the district court, if such jurisdiction existed, was conferred by the removal of this cause from the Texas state courts. The record in this court does not contain the petition for removal nor does it show the status of the complaint in the state court at the time of the removal. It does disclose that the parties, both plaintiff and defendant, were residents

of Texas. In response to questions from the court upon oral argument counsel stated that the cause was removed on the ground that it arose under the Carmack Amendment, 49 U.S.C.A. § 20(11). 28 U.S.C.A. § 1445(b) provides that 'a civil action in any state court against a common carrier or its receivers or trustees to recover damages for delay, loss, or injury of shipments, arising under Section 20 of Title 49, may not be removed to any district court of the United States unless the matter in controversy exceeds $3,000.00 exclusive of interest and costs.' See Peyton v. Railway Express Agency, Inc., 316 U.S. 350, 353 [62 S.Ct. 1171, 86 L.Ed 1525]. The draft to which the bill of lading was attached was in the sum of $3,000.00. The amended complaint, filed after removal, prayed for the recovery of that sum together with $1,000.00 attorneys' fees. The attorneys' fees sought to be recovered were provided, if at all, by Article 2226 of the Revised Civil Statutes of Texas, Vernon's Ann. Civ.St. art. 2226, set out in the margin.[1] The Texas Court of Civil Appeals has properly noted, in connection with this statute, that the Carmack Amendment, 49 U.S.C.A. § 20(11) prescribes the damages as the 'full actual loss, damage, or injury to such property, etc.', and that Texas cannot extend the carrier's liability for losses beyond the limit allowed by Congress. Thompson v. H. Rouw Co. [Tex.Civ.App.], 237 S.W.2d 662, 666. 'Claimed attorneys' fees cannot be considered for jurisdictional purposes where there is no legal basis for the recovery of such fees.' Annotation 167 A.L.R. 1249, 1250 and cases cited, including Colorado Life Co. v. Steele [8 Cir.], 95 F.2d 535. Upon the face of the amended complaint it is apparent to a legal certainty that the suit cannot involve the amount necessary to confer jurisdiction on the district court. Saint Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289 [58 S.Ct. 586, 82 L.Ed 845]; 45 Amer. Jur.Removal of Causes Sec. 27. Since jurisdiction of the Federal court must affirmatively appear from the record we cannot presume that the complaint at the time the case was removed disclosed that the jurisdictional amount was involved.

"Under the provisions of 28 U.S.C.A. § 1445(b) this case should have been remanded to the state court. However, if such an action had been instituted originally in the United States District Court, then under the holding in Peyton v. Rwy. Express Agency, 316 U.S. 350 [62 S.Ct. 1171, 86 L.Ed. 1525], irrespective of the amount involved, the court would have had jurisdiction. The question is therefore presented whether the doctrine recognized by this court in Monroe v. United Carbon Co., [5 Cir., 196 F.2d 455, 459] is applicable or whether the improper removal was fatal to the jurisdiction of the District Court.

"Before reaching a decision of that question the court will order the clerk of the district court to transmit to the clerk of this court the original or a certified copy of the petition for removal and of the proceedings in their status as removed, and will further direct the clerk of this court to forward to each of the attorneys of record in this cause a copy of the foregoing views and to request briefs from the attorneys on the jurisdictional questions disclosed. Such briefs may be typewritten and should be filed on or before June 9, 1952."

Now, upon consideration of the briefs filed as requested, it appears to us that the jurisdictional status is the same as in Monroe v. United Carbon Company, supra, wherein we said:

"* * * although this case was improperly removed, and should have been remanded if a timely motion to

---

1. "Any person having a valid claim against a person or corporation for personal services rendered, labor done, material furnished, overcharges on freight or express, lost or damaged freight or express or stock killed or injured, may present the same to such person or corporation or to any duly authorized agent thereof; and if, at the expiration of thirty (30) days thereafter, the claim has not been paid or satisfied, and he should finally obtain judgment for any amount thereof as presented for payment to such person or corporation, he may also recover, in addition to his claim and costs, a reasonable amount as attorney's fees, if represented by an attorney."

that effect had been made, we proceed to a determination of it on the merits, both parties urging us to do so, and the suit being one of which the federal court has original substantive jurisdiction."

On the merits of the case, the appellant, a common carrier by motor vehicle, was adjudged liable to the appellee for the unpaid purchase price of a shipment of marble or pinball machines, which are used for gaming or amusement purposes. The appellee had agreed to sell to the Active Amusement Company of Anderson, South Carolina, ten such machines to be shipped upon an order notify bill of lading with a sight draft attached to it. The machines, crated for shipment, were delivered to the appellant for transportation as the initial carrier, and the appellant, issued its regular form of order notify bill of lading containing the following provision:

"The surrender of this Original Order Bill of Lading properly indorsed shall be required before the delivery of the property. Inspection of property covered by this bill of lading will not be permitted unless provided by law or unless permission is indorsed on this original bill of lading or given in writing by the shipper."

The connecting carrier, the E. T. & W. N. C. Transportation Company, maintains a terminal at Greenville, South Carolina, and serves Anderson, South Carolina, by local truck from the Greenville terminal. Upon arrival of the shipment at Greenville, Mr. Floyd of Active Amusement Company was notified of the arrival and was asked if he had the bill of lading. Floyd told the agent of the connecting carrier that he did not have the bill of lading but to send the shipment over the next morning and he would have it when the shipment arrived. The next morning the shipment arrived by truck on the public street in front of the place of business of the Active Amusement Company, and the driver informed those in charge that the shipment had arrived. The driver was told to go ahead and unload the machines. Floyd and Charlie Smith, an employee of the Active Amusement Company, went outside and helped the driver unload the machines. The driver did not ask for nor was a tender made of the original bill of lading and, in fact, that bill of lading was never picked up from the bank nor was the sight draft paid. After five of the fifteen packages or crates had been unloaded onto the public street or sidewalk in front of the place of business of the Active Amusement Company, Floyd and Charlie Smith were able to see, according to their testimony, that there was a hole broken into the bottom of one of the machines, that all of the machines were dirty and scratched up, some of the crates broken and that the machines looked like they had been scraped along on their sides. The remaining ten packages or crates were not unloaded but Floyd told the driver that the Active Amusement Company would reject the entire shipment and that he should reload the machines. This the driver did and returned the shipment to the connecting carrier's warehouse in Greenville, South Carolina, where it remained at the time of trial.

Thereafter the appellee was notified of the rejection of the shipment both by the carrier and by the buyer. The appellee in turn notified the appellant that it claimed the appellant should be responsible for the balance of the purchase price of $3,000.00 because of delivery without surrender of the bill of lading and because of the fact that the consignee was allowed to inspect the shipment contrary to the terms of the bill of lading. The claim was declined by the appellant and suit was brought against the appellant for the balance of the purchase price of the machines, plus attorney's fees, upon the theory that the act of the truck driver in unloading these five packages constituted an actual delivery of the packages without the surrender of the bill of lading and that the carrier permitted an inspection of the property in violation of the terms of the bill of lading to the appellee's damage in the amount of the unpaid purchase price. Appellant joined issue and filed a cross complaint for its freight charges which had not been paid. The trial was before the court without a jury. The court found as a fact that the carrier permitted a portion of the shipment to be

inspected by the consignee contrary to the terms of the bill of lading, and found as a conclusion of law that there was a delivery in violation of the contract between the consignor and the carrier and that there was damage to the property which originated at the hands of the carrier. The court adjudged the appellant liable for the $3,000.00 remaining unpaid on the purchase price and found for the appellant on its cross complaint for the amount of the freight charges which was applied as a credit, resulting in a net judgment against the appellant for $2,598.87.

The district judge found that there had been "a casual and very unsatisfactory inspection of some of the fifteen crates". When he was asked the question: "Did the driver of the truck allow you to inspect the machines?", Floyd answered: "Well, there was no inspection done except what I could see. We didn't tear into the cartons or anything like that." Smith also testified that no effort was made to remove the wrapping. He made no examination of the machines except that he noticed one that was standing on end, and he felt sure that the plunger was bent.

Assuming, however, an unauthorized inspection of the property, we are clear to the opinion that there was no such delivery or conversion thereof as to make the carrier liable for the value of the goods.[1] In the cases relied on by the appellee there had been an actual delivery or conversion of the goods by the carrier.[2] The owner in the present case has no right to reject the property and recover its full value, but can hold the carrier responsible for any actual damage. Robinson v. Georgia Savings Bank & Trust Co., 5 Cir., 106 F.2d 944, 947, 948; 9 Am. Jur., Carriers, Sec. 560. The judgment is therefore reversed and the cause remanded for a new trial.

Reversed and remanded.

1. 9 Am.Jur. 755, Sec. 548; Dudley v. Chicago, Milwaukee & St. Paul Ry. Co., 58 W.Va. 604, 52 S.E. 718, 3 L.R.A., N.S., 1135 and note attached; Hines v. Scott, 112 Texas 506, 248 S.W. 663; Model Mill Co. v. Carolina, C. & O. Railway Co., 136 Tenn. 211, 188 S.W. 936; Hoffman v. Atchison, T. & S. F. Ry. Co., 129 Kan. 59, 281 P. 935; Bernie Mill & Gin Co. v. St. Louis S. W. Ry. Co., Mo.App., 228 S.W. 847; Morley Cypress Co. v. Hines, 160 La. 676, 107 So. 487; Earnest v. Delaware, Etc., Ry., 149 App.Div. 330, 134 N.Y.S. 323; Sloan v. Carolina Cent. Railway Co., 126 N.C. 487, 36 S.E. 21; Yuille-Miller Co. v. Chicago, I. & L. Ry. Co., 164 Mich. 58, 128 N.W. 1099; Southern Express Co. v. Grace, 109 Miss. 268, 68 So. 172; Lyons v. Hill, 46 N.H. 49, 88 Am. Dec. 189.

2. Norfolk & W. Ry. Co. v. Aylor, Supreme Court of Appeals of Virginia. 1929, 153 Va. 575, 150 S.E. 252; Atchison, T. & S. F. Railway Co. v. Schriver, 72 Kan. 550, 84 P. 119, 4 L.R.A.,N.S., 1056; Southern Express Co. v. C. L. Ruth & Son, 183 Ala. 493, 59 So. 538; Georgia, Fla. & Ala. Ry. Co. v. Blish Milling Co., 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948, affirming the Georgia Court of Appeals, 15 Ga.App. 142, 82 S.E. 784, 787; Pere Marquette Ry. Co. v. French & Co., 254 U.S. 538, 41 S.Ct. 195, 65 L.Ed. 391.